# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

Julius Edwin Hicklin,         )
      Petitioner,        )
                         )
v.                      )            1:20cv1153 (TSE/IDD)
                         )
Leslie L. Fleming,        )
      Respondent.      )

## MEMORANDUM OPINION

Julius Edwin Hicklin ("Petitioner" or "Hicklin"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his July 26, 2016 convictions in the Circuit Court for the City of the Richmond for two counts of possession of cocaine with the intent to distribute, second or subsequent offense; and one count of possession of oxycodone with the intent to distribute, second or subsequent offense. The respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. The petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) and has responded. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Court has determined that respondent's Motion to Dismiss must be granted, and the petition dismissed with prejudice.

### I. Background

On February 9, 2016, petitioner Julius E. Hicklin was convicted in the Circuit Court of the City of Richmond, Virginia of two counts of possession of a controlled substance with the intent to distribute (subsequent offense), and one count of possession of oxycodone with the intent to distribute (subsequent offense). Commonwealth v. Hicklin, Case Nos. CR15F00334-00, CR15F00335-00, and CR15F01018- 00, [Dkt. No. 8-1]. By order dated July 26, 2016, the circuit

court sentenced Hicklin to a total of 60 years' imprisonment, with 45 years suspended. [Id.].

In his petition for appeal to the Court of Appeals of Virginia, Hicklin argued that the evidence was insufficient; and that the trial court erred when it denied his motion to suppress evidence, denied his pro se post-trial motion to dismiss, and denied him his right to represent himself. Hicklin v. Commonwealth, Record No. 1407-16-2; [Dkt. No. 8-2]. The Court of Appeals denied the petition for appeal by order June 21, 2017. The Order summarized the facts regarding his convictions as follows:

> In December 2013, Detective Greg Russell of the City of Richmond Police Department arrested Appellant's brother, Joel Hicklin, on charges of maliciously wounding a woman whom Joel was dating. Russell testified that between June 2014 and Joel's bond hearing in August 2014, the victim contacted the detective on multiple occasions. On those occasions, the victim reported receiving telephone calls from appellant instructing her "not to come to court." Despite those calls, the victim appeared in court for Joel's August 2014 bond hearing, but she was escorted to and from court by appellant and the mother of Joel. When the hearing concluded, Detective Russell asked the victim to come to the Commonwealth's Attorney's Office so that they could have a conversation. When appellant attempted to accompany the victim into the office, Detective Russell "had to ask him not to [do so]" in order for the detective and the victim to speak privately. Russell testified that during that conversation, the victim remained "on [the detective's] side the entire time." When Russell and the victim finished their conversation, the victim left, again escorted by appellant and Joel's mother. Between August and September of 2014, the detective received additional telephone calls from the victim, in which she indicated that she was scared of what would happen to her and her children if she testified against Joel. On September 10, 2014, the day before Joel's preliminary hearing, the woman again contacted Detective Russell. She told him that appellant had come to her home and told her not to go to court the following day. The woman interpreted the statement as a threat and told her father about the incident. The woman's father reported to Detective Russell that after he learned that appellant threatened his daughter in person, he obtained a telephone number from her for appellant. When he called the number, a man whom he believed to be appellant answered. The woman's father told the man, "Leave my daughter alone. She's coming to court. Your brother should not have done what he did to my daughter." The woman's father reported that the man he believed to be appellant responded, "Well, that's okay. We'll handle it ourself [sic]. We'll just kill her." After receiving these reports. Detective Russell spoke to the Commonwealth's Attorney and then petitioned for a warrant to arrest appellant for felony obstruction of justice. Russell, under oath, swore to these same facts before the magistrate. The magistrate issued the arrest warrant, and approximately ten days later, Detective Sandy Ledbetter-Clarkson of the City of Richmond Police Department executed it

2

at the motel in the City of Richmond where appellant was staying.

****

The officers knocked on the motel room door, and after a delay of several minutes, appellant opened the door and made a furtive movement. The officer arrested appellant and confirmed that he was the only occupant. During a sweep of the room, Ledbetter-Clarkson located a plastic bag containing a pink substance floating in the toilet with the water still in motion. During a search of appellant incident to arrest, the police found more than two thousand dollars in cash and a plastic bag containing three smaller bags of crack cocaine.

The police obtained a search warrant for the room. During the subsequent search, law enforcement found a box of baking soda on the bedside table. They also found a box of plastic bags containing a white substance which testing revealed was not a controlled substance, suggesting it was a cutting agent instead. Also, in the room were a bag containing 13.7 grams of cocaine, another bag containing 3.55 grams of heroin and a bag containing nine individually wrapped baggies of cocaine. In the bathroom, the police found oxycodone pills and seventeen rocks of cocaine. The bag retrieved from the toilet contained more oxycodone. A digital scale and a firearm were also in the room. There were no ingestion devices, luggage, or other personal items in the room.

[Dkt. No. 8-2 at , 13-14].

Hicklin had also moved to suppress the evidence obtained as a result of his arrest for obstruction of justice prior to trial arguing that the arrest warrant was "illegally obtained" because the officer had failed to follow the provisions of Virginia Code § 19.2-72, which governs the Virginia procedure for obtaining criminal warrants. The trial court rejected the argument and the ruling was affirmed on appeal. [Id. at 5]. In the alternative, the Court of Appeals held that a statutory violation does not implicate constitutional protections and that exclusion is not a remedy for a statutory violation. [Id. at 5-6] (citing Virginia v. Moore, 563 U.S. 164 (2008); Seaton v. Commonwealth, 595 S.E.2d 9, 17 n. 7 (Va. Ct. App. 2004)). The appeals court further found the arrest warrant was supported by probable cause. [Dkt. No. 8-2 at 6-7].

The Supreme Court of Virginia refused Hicklin's further appeal by order dated April 18, 2018. Hicklin v. Commonwealth. Record No. 170976 [Dkt. No. 8-3].

On April 11, 2019, Hicklin filed a petition for writ of habeas corpus in the circuit court, in which he alleged the following claims for relief:

(1) Counsel was ineffective for failing to object to a certificate of analysis and for failing to cross-examine the forensic analyst who prepared it.

(2) Counsel was ineffective for failing to (i) "ask for a motion to strike after [Hicklin's] obstruction [of justice charge] was dismiss[ed]"; (ii) investigate whether Hicklin was falsely accused; and (iii) subpoena witnesses so that Hicklin could confront his accusers.

(3) Counsel was ineffective for failing to present "substantial mitigating evidence."

(4) Hicklin's Fourth Amendment rights were violated because the warrant to search his "premises" was invalid.

(5) Hicklin's Fourth Amendment rights were violated because he was "arrested or searched on the basis of a warrant which, applying the totality of the circumstances test, was insufficient to demonstrate a substantial basis for its issuance."

Hicklin v. Fleming, Case No. CL19-2034-6 [Dkt. No. 8-4]. The circuit court dismissed the petition on November 21, 2019 holding that Hicklin's claims (1), (4), and (5) were barred under the rule of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), which bars review of claims in state habeas that could have been raised at trial and pursued on appeal. [Id. at 3, 5]. The circuit court found that claim (2), which related to the effectiveness of counsel's representation in relation to the dismissed obstruction of justice charge, was not cognizable in habeas because the charge had been dismissed and Hicklin was not being detained on that charge. [Dkt. No. 8-4 at 4-5]. The circuit court found, in the alternative, that Hicklin had not borne his burden to establish the ineffective assistance of counsel as to claim (1), and held that Hicklin had failed to establish ineffective assistance as alleged in claim (3). The Supreme Court of Virginia refused Hicklin's appeal of the circuit court's dismissal of the habeas petition by order dated August 26, 2020. Hicklin v. Fleming, Record No. 200213 [Dkt. No. 8-5].

## II. Present Petition

On September 30, 2020, Hicklin filed a habeas petition in this Court, pursuant to 28 U.S.C.

§ 2254, in which he alleges the following claims:

(I)     "Petitioner alleges he was constructively denied effective assistance of trial counsel at a critical stage in his trial when [his] lawyer was not afforded the opportunity to cross-examine the Commonwealth's forensic analyst witness who prepared the Drug Certificate of Analysis."

(II)    Counsel was ineffective for failing to (i) "ask for a motion to strike after [Hicklin's] obstruction [of justice charge] was dismiss[ed]"; (ii) investigate whether Hicklin was falsely accused; and (iii) subpoena witnesses so that Hicklin could confront his accusers.

(III)   Counsel was ineffective at sentencing by failing to present mitigating evidence.

(IV)   Hicklin's Fourth Amendment rights were violated because the warrant to search his "premises" was invalid.

(V)    Hicklin's Fourth Amendment rights were violated because he was "arrested or searched on the basis of a warrant which, applying the totality of the circumstances test, was insufficient to demonstrate a substantial basis for its issuance.

[Dkt. No. 1-1 at 4-7, 8-11, 12-15, 15-19, 20-22]. The respondent admits that all of Hicklin's

claims are exhausted. [Dkt. No. 8 at 7].

### III. Procedural Default

Respondent moves to dismiss claims (I), (IV), and (V) because they were found to be

defaulted under the rule of Slayton v. Parrigan in the state habeas proceedings and are therefore

barred from federal habeas review. "A habeas petitioner is barred from seeking federal review of a

claim that was presented to a state court and 'clearly and expressly' denied on the independent,

adequate state ground of procedural default." Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir.

1996) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). A procedural rule is adequate "if it is

regularly or consistently applied by the state court," and independent "if it does not 'depend[] on

a federal constitutional ruling.'" Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999) (quoting

Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

The Fourth Circuit has held that a finding of default under the rule of Slayton v. Parrigan is

an independent and adequate state law ground that precludes federal review absent a showing of

cause and prejudice for the default. Prieto v. Zook, 791 F.3d 465, 468 (4th Cir. 2015) (citing Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).); Reid v. True, 349 F.33d 788, 805 (4th Cir. 2003) (citing Wright v. Angelone, 141 F.3d 151, 159-60 (4th Cir. 1998)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). To show "prejudice," a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). Hicklin does not argue any basis to excuse his procedural default barring federal habeas review of claims (I), (IV), and (V).

To the extent Hicklin's claim (I) could be interpreted as a claim of ineffective assistance of trial counsel, it could arguably qualify for the narrow exception recognized in Martinez v. Ryan, 566 U.S. 1 (2012), which held that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel at trail." Id. at 9. The narrow exception can only "overcome the default ... [if] the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 14. The alleged failure to object to the lack of an opportunity to cross-examine the person who performed the analysis of the drugs reflected in the certificate of analysis is not a substantial claim of ineffective assistance of counsel.

To establish a claim of ineffective assistance of counsel, Hicklin must satisfy both prongs of the test established in Strickland v. Washington, 466 U.S. 668 (1984), which requires a

6

petitioner demonstrate both deficient performance and prejudice. To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance," id. at 690. See, infra at 11-13. The burden is Hicklin's and he has failed to demonstrate any merit to his claim with respect to both prongs.

Under Virginia law, after receiving notice from the prosecutor of the intent to offer a certificate of analysis into evidence in lieu of testimony, an accused may object in writing to the admission of the certificate of analysis and demand that the forensic scientist who prepared the certificate analysis appear at trial to testify. Va. Code § 19.2-187.1. The notice and demand aspects of § 19.2-187.1 satisfy the confrontation issue that formed the basis for the reversal in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), which recognized the validity of such notice and demand statues. Id. at 326. To be sure, Melendez-Diaz noted that

> [d]efense attorneys and their clients will often *stipulate* to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion.

Id. at 328 (emphasis added).

Here, the certificates of analysis were attached to the prosecutor's response to defense counsel's motion for discovery, which was filed on February 4, 2015. The prosecutor's response included the warning required under Virginia Code § 19.2-187.1 that the prosecution intended to rely on the reports at trial and that counsel had fourteen days to object to their admission. (Cir. Ct. Case No. CR15F-334-00 at 31-32, 42-43). See Hardy v. Dir., Dep't of Corr., No. 1:14cv1382 (AJT/TCB), 2015 U.S. Dist. LEXIS 54522, *15 (E.D. Va. Apr. 22, 2015) (applying deference

standard, not unreasonable for counsel not to object to certificate of analysis because prosecutor

complied with the notice and demand requirements of Code § 19.2-187.1); see also United States

v. Williams, 403 Fed. Appx. 707, 709 (3d Cir. 2010) ("an attorney's decision to stipulate to

evidence and thereby waive his client's confrontation rights is a legitimate trial tactic and part of

a prudent trial strategy as long as the decision does not constitute ineffective assistance of

counsel").[1] In a similar situation, this Court has held that

> [w]hether to make an objection is a tactical decision, and it is sound trial strategy
> for defense attorneys to refrain from objecting to a certificate of analysis. See
> Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989); see also Melendez-Diaz
> v. Massachusetts, 557 U.S. 305, 328 (2009); Humphries v. Ozmint, 397 F.3d 206,
> 234 (4th Cir. 2005) (a trial lawyer may forgo a "valid" objection for tactical
> reasons). Additionally, petitioner has not shown what effect the analyst's
> testimony would have had at trial. Thus, the state habeas court's holding is
> entitled to deference, and [the claim] must be dismissed.

Evans v. Clarke, 1:15cv558 (CMH/IDD), 2016 U.S. Dist. LEXIS 36008, *21 (E.D. Va. Mar. 16,

2016), appeal dismissed, 668 F. App'x. 60 (4th Cir. 2016).[2] Accordingly, Hicklin has not

---

[1] Counsel's actions in not raising an objection are, in essence, a stipulation. "It is not objectively unreasonable for counsel to stipulate to a fact that the government can prove." Morva v. Zook, 821 F.3d 517, 533 (4th Cir. 2016) (citing United States v. Toms, 396 F.3d 427, 433-34, 364 U.S. App. D.C. 397 (D.C. Cir. 2005) (finding no deficient performance when counsel stipulated to a fact the government was prepared to show through witness testimony)); see also United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) ("As a rule, counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation."); Young v. Catoe, 205 F.3d 750, 759 (4th Cir. 2000) (upholding the validity of tactical concessions on the grounds that, "on occasion, it is best to risk losing the battle in the hope of winning the war"); United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc) (holding trial counsel may waive matters such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" as matters that "primarily involve trial strategy and tactics") (internal citations and quotation marks omitted); cf. Harrington v. Richter, 562 U.S. 86, 109 (2011) ("[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'") (citing Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)).

[2] As noted by the Court of Appeals in rejecting Hicklin's challenge to the sufficiency of the evidence on appeal, there was a vast array of evidence that supported Hicklin's possession of the contraband: Hicklin locked the door in response to the officer's knock; when he eventually unlocked the door, an officer found a baggie of pills in the toilet with the water still circling; an officer found over two-thousand dollars in cash, scales, a handgun, multiple plastic bags of what appeared to be contraband, and a box of cutting agent in the room; and Hicklin's admitted "that he was familiar with the appearance of narcotics and conceded that he possessed the cocaine found on his person." [Dkt. No. 8-2 at 13-16]. There is no evidence that the forensic expert, or any expert, would have testified to any matter favorable to Hicklin. Cf. Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Counsel had more than enough to concern himself with in trying to defend Hicklin without having an expert testify about a matter that the government could easily prove.

established a claim of ineffective assistance of counsel under either prong of Strickland.

To the extent Hicklin argues he is actually innocent, such a claim fails as well. "[C]laims of actual innocence are rarely successful," Schlup v. Delo, 513 U.S. 298, 324 (1995), and "should not be granted casually." Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under Schlup is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' McQuiggin v. Perkins, 569 U.S. 383, 401 (2013) (quoting Schlup, 513 U.S. at 316).

In order to demonstrate the fundamental miscarriage of justice exception to AEDPA's statute of limitations, a petitioner must present *new* evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327 (emphasis added). Hicklin has not proffered any "new reliable evidence" demonstrating a colorable claim of actual innocence. Coleman v. Thompson, 501 U.S. 722, 730 (1991); Sharpe v. Bell, 539 F.3d 372, 377 (4th Cir. 2010). Accordingly, there is no cause to excuse the default of claims (I),(IV), and (V) an allow for review of Hicklin's defaulted claims.

### IV. Merits Standard of Review

Review of petitioner's claims is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA standard requires federal courts give deference to the state court's merits decision unless the decision was (1) contrary to, or an unreasonable application of, a clearly established United States Supreme Court decision, or (2) based on an unreasonable determination of facts "in light of the record before the state court." Harrington, 562 U.S. at 100; see 28 U.S.C. § 2254(d)(2). Under 28 U.S.C. § 2254(e)(1), a federal court must

9

presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006) ("[t]he required deference encompasses both the state court's legal conclusions and its factual findings"); see also Wood v. Allen, 558 U.S. 290, 300 (2010). ("a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance"); Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) ("federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence").

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when a state court correctly identifies the "governing legal principle ... but unreasonably applies that principle to the facts of the ... case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted).[3] In making this assessment, federal courts "look to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

> [T]he United States Supreme Court has increasingly cautioned, AEDPA significantly constrains our review of state court decisions on federal constitutional claims. We are not at liberty to substitute our judgment for that of the state court on matters of federal constitutional law, even if we believe the state court decision was incorrect. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable* — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (emphasis added); see also Harrington v. Richter, 562 U.S. 86 (2011). The state court decision may be deemed unreasonable "only if it is so erroneous that 'there is no possibility fairminded

---

[3] "Only holdings of the Supreme Court issued by the time of the relevant state court decision, and not circuit precedent, can form the basis for habeas relief under Section 2254(d)(1)." Dodson v. Ballard, 800 F. App'x. 171, 176 (4th Cir. 2020) (citing Parker v. Matthews, 567 U.S. 37, 48-49, (2012); Barnes, 751 F.3d at 239). The federal court reviews the "ultimate decision" of the state court, not the specific contents of its reasoning or opinion. Blanton v. Quarterman, 543 F.3d 230, 236 (5th Cir. 2008). The state court need not articulate, or even know, the clearly established Supreme Court law, so long as its reasoning and decision do not contradict such law. See Lenz, 444 F.3d at 307.

jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" Nevada v. Jackson, [569 U.S. 505, 508-09] (2013) (per curiam) (quoting Harrington, [562 U.S. at 102].

Hurst v. Joyner, 757 F.3d 389, 394 (4th Cir. 2014).

Finally, under the look through doctrine, the detailed ruling of the circuit court in the state habeas corpus proceedings, which was summarily affirmed by the Supreme Court of Virginia, is entitled to deference. See Ylst v. Nunnemaker, 501 U.S. 797 (2001).

### V. Ineffective Assistance of Counsel

Hicklin's claim ineffective assistance of trial counsel claim is subject to the two-prong test set out in Strickland, which requires a petitioner establish both deficient performance and prejudice. Deficient performance requires a petitioner show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. In making such a determination, a federal habeas court "must be highly deferential" and presume "that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "If counsel's performance is found to have been deficient under the first part of the Strickland standard, to obtain relief the petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (quoting Strickland, 466 U.S. at 694); see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

A trial attorney's tactical decisions deserve a high degree of deference in habeas corpus review, and if there is even a chance that counsel's actions were based on sound tactical judgments, the presumption to that effect has not been overcome. See Darden v. Wainwright,

477 U.S. 168, 186 (1986); Strickland, 466 U.S. at 689; Matthews v. Evatt, 105 F.3d 907, 921 (4th Cir. 1997); see also United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) (tactical decisions of trial attorney, if reasonably made, provide no basis for ineffective assistance claim).

The second prong of the Strickland test, the "prejudice" inquiry, requires showing that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id.

> [T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, 27 (2009) (*per curiam*); Strickland, 466 U.S. at 693. Instead, Strickland asks whether it is "reasonably likely" the result would have been different. Id., at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697. The likelihood of a different result must be substantial, not just conceivable. Id., at 693.

Harrington, 562 U.S. at 111-12.

An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see also Strickland, 466 U.S. at 697.

In Harrington, the Supreme Court explained the impact of the deferential scope of federal habeas review with respect to claims of ineffective assistance of counsel decided by state courts applying Strickland, explaining that establishing an error by the state court is insufficient under § 2254, because "[f]or purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" 562 U.S. at 101 (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. As the Court succinctly stated, "[i]f this standard is difficult to meet,

that is because it was meant to be." Id.

Finally, "[w]hen assessing a Strickland claim through the lens of AEDPA, [this Court's] review is 'doubly deferential.'" Valentino v. Clarke, 972 F.3d 560, 580 (4th Cir. 2020) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)) (citing Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) ("[F]ederal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'")). Habeas relief can only be granted "if the state-court decision unreasonably applied" Strickland. Knowles, 556 U.S. at 122. In Harrington, the Court noted that, even without § 2254's deference, the Strickland standard "is a most deferential one." Id. at 105; see Morva, 821 F.3d at 528 (double-deference standard effectively limits federal review "to a determination of 'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'") (citations omitted); see also Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011) (given "[d]ouble deference ... it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in" federal habeas). "Under the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles, 556 U.S. at 123. "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id. In other words, the double-deference standard effectively limits federal "review to determining whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Valentino, 972 F.3d at 580 (internal quotation marks and citations omitted).

## VI. Analysis

Claim (I) was addressed above because it had been defaulted in the state habeas

proceedings. The state circuit court held, in the alternative if not defaulted, that Hicklin had failed to establish counsel acted unreasonably by not objecting to the certificate of analysis and had failed to prove how he was prejudiced. [Dkt. No. 8-4 at 3-4]. The Court reached the same conclusion in examining the claim of ineffective assistance of counsel under the narrow exception created by Martinez. The dismissal of claim (I) for failure to state a claim of ineffective assistance of counsel was neither contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts and will be dismissed. See, supra at 6-9.

Hicklin alleges in claim (II) that that his trial counsel was ineffective for failing to (i) "ask for a motion to strike after [Hicklin's] obstruction [of justice charge] was dismiss[ed]"; (ii) investigate whether Hicklin was falsely accused of obstruction of justice; and (iii) subpoena witnesses so that Hicklin could confront his accusers. [Dkt. No. 1-1 at 8-11].[4] Claim (II), however, first requires the Court to determine if it has jurisdiction to consider the claim or whether it must instead be dismissed for lack of jurisdiction.

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on "behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is *in custody* in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (emphasis added). The Supreme Court has interpreted the phrase "in custody" as requiring the petitioner be "*under the conviction or sentence under attack at the time his petition is filed.*" Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (emphasis added). Various circuits have likewise noted that to be "in custody," which confers jurisdiction upon a district court to consider a federal habeas petition, requires that the petitioner be confined for the specific conviction being

---

[4] Hicklin fails to note in his petition that the circuit court, at the request of his counsel, dismissed the charge with prejudice (2/9/16 T. at 8-12, 113-14), which negated the need to pursue a motion to strike.

14

challenged. If the petitioner is not confined pursuant to the conviction that he challenges, then the "in custody" requirement is not met. Obado v. New Jersey, 328 F.3d 716, 717 (3d Cir. 2003) ("A petitioner must be in custody under the conviction he is attacking at the time the habeas petition is filed") (citation omitted); Smith v. Bogan, 31 F. App'x 152 [published in full-text format at 2001 U.S. App. LEXIS 30663] (5th Cir. Dec. 11, 2001) ("Because the charges were dismissed, Smith is not in custody under a criminal sentence, and no habeas corpus or 28 U.S.C. § 2255 relief is available for any constitutional violations that may have occurred during the criminal proceedings or the events giving rise to those proceedings."); Charlton v. Morris, 53 F.3d 929, 929 (8th Cir. 1995) (finding district court lacked jurisdiction to address the merits of petitioners § 2254 petition because he "had served his state sentence and was discharged from supervised release ... was no longer 'in custody' for his state conviction"); Escobedo v. Estelle, 655 F.2d 613 (5th Cir. 1981) ("We hold that a habeas petitioner does not meet the statutory 'in custody' requirement when he is no longer (and was not at the time he filed his petition) in custody pursuant to the conviction he attacks.").[5] "It is black letter law that a federal court may grant habeas relief only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998).

The present federal habeas petition was not filed until September 22, 2020, the date Hicklin signed his petition. [Dkt. No. 1 at 14], which is more than four years after the obstruction of justice charge was dismissed with prejudice by the circuit court on February 9, 2016. Hicklin

---

[5] "The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe *restraints on individual liberty*." Hensley v. Mun. Court, 411 U.S. 345, 351 (1973) (emphasis added). As a result, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." Id. The dismissal of the obstruction of justice charge with prejudice (2/9/16 T. at 8-12, 113-14), a "conventional remedy," precludes *any* future prosecution and thus there is no possible restraint connected to that charge. (Cir. Ct. Case No. CR15F-334-00 at 224-29, 330-31).

was not in custody with respect to the obstruction of justice charge after February 9, 2016. Consequently, claim (II) is dismissed for lack of jurisdiction.

In claim (III), Hicklin alleges that his trial counsel was ineffective at sentencing for failing to present mitigating evidence and for "failing to investigate." (ECF 1-1 at 12-13). The state court rejected this claim because Hicklin failed to either proffer what mitigating evidence counsel should have presented at sentencing, or proffer what favorable evidence would have been discovered by further investigation. The circuit court found Hicklin's failure to proffer was

> fatal to his claim. See Muhammad v. Warden, 274 Va. 3, 18, 646 S.E.2d 182, 195 (2007) (failure to proffer affidavits regarding testimony witness would have offered is fatal to Strickland claims). Cf. Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). See also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed.").

[Dkt. No. 8-4 at 7]. The dismissal of claim (III) for failure to state a claim of ineffective assistance of counsel was neither contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts and will be dismissed.

Claims (IV) and (V) each raise alleged Fourth Amendment violations that Hicklin's room was searched without probable cause "because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances" [Dkt. No. 1-1 at 14-16]; and his arrest was improper because based upon the totality of the circumstances, which were "insufficient to demonstrate a substantial basis for its issuance." [Id. at 20].

Respondent correctly notes that, in addition to being barred from federal habeas review because both claims are defaulted, see, supra at 5-6, that Hicklin had a full and fair opportunity to raise his Fourth Amendment arguments by way of his trial court motion to suppress evidence and pursue the matter on appeal. In Stone v. Powell, 428 U.S. 465 (1976), the Court held that "where the

State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494 (footnote omitted); see, e.g., Boggs v. Bair, 892 F.2d 1193, 1200 (4th Cir. 1989) (petitioner had a full and fair opportunity to litigate the search of his vehicle and his subsequent statements were not fruit of the poisonous tree). Stone requires only the availability of procedures for the defendant to litigate the issue in state court; a defendant's failure to take advantage of the opportunity, whether intentionally or through inadvertence, does not circumvent the rule of Stone. United States ex rel. Maxey v. Morris, 591 F.2d 386, 388-89 (7th Cir. 1979), cert. denied, 442 U.S. 912 (1979); Caver v. Alabama, 577 F.2d 1188, 1193 (5th Cir. 1978); Lenza v. Wyrick, 665 F.2d 804, 808 (8th Cir. 1981).

The Fourth Circuit has directed in a habeas proceeding, when a federal district court is faced with Fourth Amendment claims, it should "first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). Doleman found that Virginia provides a full and fair opportunity in accordance with Stone because in Virginia a defendant has the "opportunity to present his Fourth Amendment claims by a motion to suppress both at the trial court level and thereafter to assign as an error, an adverse ruling thereon, on appeal." Id. It is clear from the record that Virginia procedures provided Hicklin with a means to raise Fourth Amendment claims at trial and on appeal, and that he did in fact did raise Fourth Amendment objections. Accordingly, claims (IV) and (V) are dismissed under the rule of Stone v. Powell.

### VI. Conclusion

For the foregoing reasons, the motion to dismiss the petition must be granted and the

petition must be dismissed with prejudice and an appropriate Order shall issue.[6]

Entered this 2ᵗʰ day of _____, 2021.

/s/

T. S. Ellis, III
United States District Judge

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.